# JOINT VENTURES, INC. v DEPARTMENT OF TRANSPORTATION

## Case No. 86-0285

State of Florida, Division of Administrative Hearings

May 6, 1986

### APPEARANCES OF COUNSEL

**S. Cary Gaylord** for petitioner.

**Paul J. Martin** for respondent.

## OPINION

K. N. AYERS, Hearing Officer.

### ORDER

Pursuant to notice the Division of Administrative Hearings by its duly designated Hearing Officer, K. N. Ayers held an administrative hearing in the above styled case on March 27, 1986 at Tampa, Florida.

By Petition for Invalidation for Map of Reservation dated December 27, 1985, Joint Ventures, Inc., Petitioner, seeks an order invalidating the Map of Reservation filed by the Department of Transportation (DOT), Respondent, which includes property owned by Petitioner. As grounds therefor it is alleged filing of the map of reservation constitutes a taking of the property without just compensation; the regulation proposed by the map of reservation is arbitrary; and that the filing of the map of reservation impairs a contract entered into by the owners to sell this property before the map of reservation was filed.

At the hearing Petitioner called three witnesses, Respondent called three witnesses and seven exhibits were admitted into evidence. Petitioner was allowed to submit evidence attempting to show the filing of the map of reservation constituted a taking of its property without just compensation in violation of the United States and Florida Constitutions. Ruling on the constitutionality of Sec 331.442 Florida Statutes (1985) is outside the jurisdiction of this tribunal and this evidence is here considered only insofar as it tends to show that such regulation of Petitioner's property is unreasonable or arbitrary.

Proposed findings have been submitted by the parties. Petitioner's proposed findings have not been numbered as directed by Post Hearing Order dated March 3, 1986. The ten paragraphs in that proposed order under Findings of Fact have been considered consecutively and treatment accorded those proposed findings and the proposed findings submitted by DOT are contained in Appendix A attached hereto and made a part hereof.

### FINDINGS OF FACT

1. In conjunction with the preparation of plans for widening Dale Mabry Highway in Tampa, Florida, DOT in November 1985, filed a map of reservation which includes 6.49 acres owned by Petitioner.

2. The map of reservation was filed and approved by the Hillsborough County Commission in compliance with all applicable statutes and regulations.

152

3. The property in question is adjacent to the west boundary of Dale Mabry and south of the Waters Avenue intersection.

4. The purpose of the map of reservation is to restrict building on the property for up to five years pending the filing of condemnation proceedings. DOT intends to use the area for storm water management of the runoff from the additional paving resulting from the widening of Dale Mabry.

5. The parent tract is 8.3 acres in size while the area encompassed within the reservation map is 6.49 acres. The entire tract is undeveloped, but to the north and south of the property along Dale Mabry Highway industrial and commercial development has occurred. The tract was acquired by the Petitioner in 1969 as an investment and has remained essentially in an undeveloped state since that time. During the period between 1969 and the present the value of the property has gradually risen until today it is sufficiently valuable to warrant development and the cost associated therewith.

6. In the distant past most of this area in the vicinity of this property was wetlands. Prior to the acquisition of this tract by the owners, a drainage ditch, Channel H, was dug through an area just west of this tract. That has had the effect of draining part of the area and has impacted on the wetlands function performed by this tract. Some dredging was done on this tract before dredge and fill laws were enacted and the area is no longer a pristine wetland. Both Channel H and the earlier demucking have caused some diminution of the property's wetlands effectiveness.

7. No development plans have been submitted to the Department of Environmental Regulation (DER) for the development of this property. Preliminary surveys of the property conducted by DER personnel indicate approximately fifty percent of the property is wetlands and can be developed only by obtaining a dredge and fill permit from DER. Until such time as development plans are received DER will not commit itself to what developments will be permitted on land subject to DER jurisdiction.

8. The highest elevation on this tract is adjacent to Dale Mabry Highway. This area is clearly upland and can be developed without a permit from DER. The map of reservation excludes the portion of the tract running along the west Dale Mabry boundary 165 feet deep. This tract constitutes 1.81 acres (8.3—6.49) abutting Dale Mabry.

9. The undeveloped tract currently performs a wetland function in that storm water runoff from the east side of Dale Mabry highway

**153**

flows through a culvert under Dale Mabry in the vicinity of this property then across this property to Channel H. Similarly storm water runoff from the west side of Dale Mabry runs south to this property thence to Channel H.

10. Prior to selecting the Petitioner's property for ultimate condemnation to use in the storm water management program necessary for the construction on Dale Mabry, the consulting engineers on the project surveyed the area looking for appropriate sites. This site, another site at the southwest junction of Dale Mabry and Waters, and two sites east of Dale Mabry were considered. The sites east of Dale Mabry consisted of borrow pits. One was too high and would require extensive piping to transport the water to Channel H and the other already has water quality problems which could preclude water from this pit being pumped into Channel H (and from there to state waters). The property at the southwest intersection of Dale Mabry and Waters was deemed to be more valuable for commercial development and would require more development as a storm water management area than the site owned by Petitioners. Petitioner's property will require little, if any, changes to serve the intended function as a waste water management area. This will reduce the cost to DOT for so using the property.

11. After tentatively selecting this site for storm water management the consulting engineers went to DER to obtain information on sites DER would suggest to use for storm water management purposes. DER suggested Petitioner's property and advised of water quality problems in the borrow pit.

12. Both the Hillsborough County Environmental Protection Commission (EPC) and DER are involved in the development of environmentally sensitive areas. In 1984 the EPC advised Petitioner that one of EPC's water quality managers had stated that 85% of this property was developable and invited Petitioner to submit preliminary plans for developing 85% of the property (Exhibit 2). No development plans have been submitted. Despite EPC's 1984 letter, DER exercises ultimate jurisdiction over dredge and fill permits involving wetlands and no such property can be developed exceeding that approved by DER. Accordingly, the 85% developable ratio used by Petitioner's witnesses is given little credence.

13. Some three weeks before DOT filed its map of reservation, Petitioner entered into a contract to sell this property for $800,000. The contract is contingent on the buyer being able to obtain the permits necessary to develop the property. Several meetings have been

154

held between the buyer, DOT and DER personnel to discuss how the property may be developed and still serve DOT as a storm water management area. No plans for such joint use have been presented to DER.

14. Petitioner presented one witness who opined the property was worth $1,000,000. Presumably that appraisal did not include the 1.81 acres fronting along Dale Mabry which is not included in the map of reservation. The contract to sell the property for $800,000 cash comprised the part included in the map of reservation and the tract 165 feet deep fronting on Dale Mabry. This contract which was reached in an arms length transaction indicates the price a willing buyer is willing to pay a willing seller and is a much more credible sum than is the $1 million appraisal offered by Petitioner's witness. If this witness intended his $1 million valuation to be applicable to the 8.3 acre tract, in estimating the loss to Petitioner as a result of the restrictions imposed by the map of reservation, this witness neglected to deduct the value of the 1.81 acres fronting Dale Mabry Highway in reaching that calculation.

15. This witness attempted to place a value on the loss sustained by Petitioner as a result of the inability to market the property after the filing of the map of reservation. In making this calculation, he assumed 85% of the property to be developable and a value of $1 million. These figures are unsupported by credible evidence and the value arrived therefrom is not credible. Further, the filing of the map of reservation only restricts the issuance of a permit in connection with this property. Petitioner is free to do with the property exactly what it has done with the property since it was acquired in 1969.

16. Although no evidence was presented that the project involving the widening of Dale Mabry in the vicinity of this property will be accomplished on a date certain, the project is scheduled to be let for bids in December, 1987. Prior to commencing any work on the project condemnation proceedings for all property involved must be underway. Although this schedule is subject to change if funding is not timely provided, this is not an event expected to occur.

17. DER requires the storm water runoff from additional paving resulting from the widening of Dale Mabry be treated before this storm water runoff is discharged into State waters. Accordingly, it is essential that DOT show capability for storm water management before this project can be approved.

18. Section 337.241 Florida Statutes (1985), was enacted as S.140, ch. 84-309 Laws of Florida, 1984, and amended slightly by S.2, ch. 85-

149, Laws of Florida, 1985. Some of these provisions were formerly found in § 335.02(3) and (4) Florida Statutes. The purpose of the filing of a map of reservation is to preclude development of the property, while road construction plans are being prepared which include the use of the property, before the acquisition of the property by DOT. During construction involving the widening of US 19 in Pinellas and Pasco Counties, numerous instances arose where development of property needed for storm water management as a result of widening of US 19 commenced after plans for use of the property had been made but before condemnation of the property by DOT. This resulted in an increase in the cost of acquiring the property.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to, and subject matter of, these proceedings.

Section 337.241(3) Florida Statutes (1985) provides for the hearing herein conducted. That section provides in part that when the hearing results in an order in favor of the Petitioning party, the department shall have 150 days from the date of such order to acquire such property or file appropriate proceedings. Appellate review by either party may be resorted to. In order for DOT to appeal, the order appealed from must be the order of the Hearing Officer and not a final order issued by DOT. *School Board of Collier County v. Steele*, 348 So.2d 1166 (Fla. 1st DCA 1977). Although Section 337.241 does not specifically state that the officer conducting the Ch 120 hearing provided for in this section shall enter a Final Order in lieu of a Recommended Order, the former is the only Order which can be appealed by DOT. It is implicit in those provisions of § 337.241(3) that the nature of the order rendered by the Hearing Officer in these proceedings is a Final Order.

Here the burden is on Petitioner to prove, by a preponderance of the evidence, that the action of DOT in filing the map of reservation is unreasonable or arbitrary. *Balino v. Department of Health and Rehabilitative Services*, 348 So.2d 349 (Fla. 1st DCA 1977). This Petitioner has failed to do so. Although Petitioner presented some evidence that the filing of the map of reservation constitutes a taking by limiting the future uses to which the property can be put this, in effect, constitutes a challenge to the constitutionality of the statute. Such an issue is not within the jurisdiction of this tribunal to consider.

Respondent presented evidence clearly establishing need for property to be used for waste water management in conjunction with the Dale Mabry Highway project. The evidence was unrebutted that the prop-

erty chosen, which is owned by Petitioner, was the property most suitable for the intended purpose by reason of its undeveloped state, wetlands characteristics and ability to so serve with limited modification.

No evidence was submitted regarding the value of the 1.81 acres upland part of the Petitioner's property adjacent to Dale Mabry that was not included in the map of reservation. Accordingly, no evidence was presented from which the value of the parcel included in the map of reservation can be determined. In any event, it is less than the $1 million asserted by Petitioner's witness. Likewise, the 85% usable portion of the property used in Petitioner's calculation of value is unsupported by credible evidence. First, the 85% figure contained in Exhibit 2 included the upland 1.81 acres along side Dale Mabry which is not included in the map of reservation. Secondly, testimony that only 50 percent of the property is developable is deemed more credible.

From the foregoing it is concluded that the filing of the map of reservation by DOT on property owned by Joint Ventures, Inc., alongside Dale Mabry Highway was neither unreasonable nor arbitrary. It is

ORDERED the Petition of Joint Ventures, Inc., to have the map of reservation on its property adjacent to Dale Mabry Highway south of Waters Avenue in Tampa, Florida, set aside, be dismissed.